{¶ 38} I agree that the MedAmerica policy is not within the R.C.3937.18(L)(2) definition of an "automobile liability or motor vehicle liability policy of insurance" because it contains no requirement that the insured maintain the underlying liability coverage that R.C.3937.18(L)(1) describes. The existence of that form of underlying coverage is a necessary predicate to the excess coverage that R.C.3937.18(L)(2) involves. Jump v. Nationwide Mut. Ins. Co. (Nov. 2, 2001), Montgomery App. No. 18880.[13] Absent the insured's agreement to maintain that underlying coverage, the excess liability insurer cannot know that in consequence of the underlying coverage its excess liability policy is within the terms of the R.C. 3937.18(L)(2) definition. And, unless it is, the insurer is not subject to the mandates of R.C. 3937.18(A) to offer UM/UIM coverage, which therefore is not impressed on the policy by operation of law when it is lacking.
 {¶ 39} I do not agree, however, with the distinction between an umbrella liability policy and other excess liability policies in Pillov. Stricklin (Feb. 5, 2001), Stark App. No. 2000-CA-0201,[14] which the majority adopts and follows. The distinction is largely academic. See Holme's Appleman On Insurance, 2d. (1996), Volume 1, Section 2.16. Whether an excess liability policy also "drops down" to provide underlying coverage seems to me to be immaterial to the two-tier test the General Assembly devised when it enacted R.C. 3937.18(L)(1) and (2). Therefore, I would not follow Pillo, but would affirm for the reason I have stated.
[13] We decided Jump on the later version of R.C. 3937.18(L)(2) that was enacted in 1999 by S.B. No. 57. Its terms are more precise, but both versions of the statute involve the same two-tier test for umbrella coverage.
[14] We did not follow Pillo when we decided Jump, as at least one of the electronic reporting service versions of our opinion in Jump indicates. The official version filed with the clerk makes no reference to Pillo or its rationale.